306, Michelle Frakes, and I'm honoring the honor of comments by Gilbert Feldman for Peoria School District No. 150, FD, by Stanley Eisenhammer. Mr. Feldman? Good afternoon. I am Gilbert Feldman. I represent the two plaintiffs in this case. This case involves conflicting interpretation of a section of the school code which deals with reductions in force called RIFs. Our interpretation of that section is that the legislature changed the rules in the case of a RIF and created a procedure based upon measured performance to determine the identification of the teachers to be dismissed due to the RIF. Can I ask a preliminary question? There wasn't a report of proceedings supplied here, and you make the assertion that the actual reduction in force was not a conditional proceeding to the implementation of the RIF procedures. That was a finding by the Supreme Court. That's what it says. Where does it say that? In his order. It's on appeal. Okay. And so they make that, he makes that specific finding in the order. Specific words. It says that the question of whether or not there was a RIF is irrelevant. That's what this case is about. And that's what he says, irrelevant. Yes. Right. Okay. Okay. But he doesn't say it was not a conditional proceeding. Okay. I see. You're interpreting the words. Alright. If you read the whole order, I don't think it would be read in any other way. Okay. The district's interpretation, adopted by the circuit court, is that the existence or nonexistence of a RIF is totally irrelevant, and that the legislature intended that the district would have the discretion to unilaterally target any tenured teacher as an employee at will, and in the exercise of its unfettered discretion, dismiss that teacher. In other words, tenure no longer exists. That's their position. We submit there are four provisions in the statute, in the language of the statute, which are irreconcilable with the district's statutory construction and the decision below. First, unfettered discretion of the district, in the absence of any conditions such as a RIF or due process rights, to rely on a single evaluation to place any tenured teacher in the district in Group 2, and to ultimately rely upon that placement as the basis of a dismissal of that tenured teacher, cannot be reconciled with the provisions in Section 524A, which we described in footnote 3 of our brief. That section provides for dealing with evaluation of teachers as detailed due process rights, including the right to go to court and challenge the district, et cetera. If the circuit court decision is correct, and upon one evaluation they can dismiss the teacher, this provision in Section 524A has been rendered meaningless and has been read out of the statute. The same is true with respect to the dismissal for cause provision in this section, and the extensive due process rights of tenured teachers. For if a district did not prove cause, if it can dismiss a tenured teacher as an employee, it will. The two are simply unreconcilable. Third, the statute authorizes discretionary dismissals in the spring semester as a result of a decision of a school board to decrease the number of teachers employed by the board. But there was no such decision in the spring semester because of the uncertainty of funding and enrollment. And the decision in the spring was to compile an eligibility list of teachers sufficient in number to authorize later dismissals if necessary to decrease the number of teachers needed as a result of inadequate funding, which inadequate funding required a reduction in staff. The board had to issue those notices because it cannot legally dismiss a teacher in fall when it gets full information or in summer if the teacher has not received that notice. So what you have is year after year they issue these spring notices. In the past it was just the non-tenured teachers. But they issue them in an abundant number so when they determine what their funding is, they will be in a position to decide who, if anybody, must be dismissed. The decision by the district whom to dismiss and whether to dismiss anyone was not made until the funding figures were known in late summer. That's when they decision who to dismiss and whether to dismiss anybody was made. Next, the statute requires that the dismissals be made pursuant to the order of these four groupings, one through four, based upon evaluations. That means that the non-tenured group one teachers must be dismissed before the teachers in group two, such as the plaintiffs. But under the interpretation of the district, that mandate is meaningless because after receiving the funding information, the district simply recalled the probationary teachers in group one that it wanted to retain and retained the dismissal of the plaintiffs and hired new outside employees to replace the plaintiffs. So if the district is correct, the whole main provision in this statute, the grouping from one to four is meaningless and is read out of the statute. We have cited cases in our brief at page nine in which the Supreme Court has held that tenure laws must be construed broadly to protect teachers against the whim of school boards. And in the district's brief, and Peter cited at page 21 of their brief, the Illinois Supreme Court held that a school board cannot exercise its discretionary powers in a way that is political, partisan, capricious, fickle, or irregular. Yet the district seeks an interpretation of this statute giving it the unfettered right to dismiss tenured teachers in the absence of any due process or any condition at its own discretion. We submit that this statutory construction cannot be upheld. If the legislature had intended that tenured teachers could be dismissed at the discretion of the board in the absence of a riff, it would not have written all of these other provisions which I have referred to in the many pages of this section of the statute because they're meaningless and they're absolutely out of the statute and they would accomplish, this is what they would accomplish if the district's interpretation was upheld. Any questions? No, sir. You'll have an opportunity for rebuttal. I intend to use it. I suspected so. All right. Counsel, this is really light. Eisenhammer? May it please the court. I am Stanley Eisenhammer. I represent the defendant in the Peoria School District, number 150. The plaintiffs in this case were two tenured teachers who received unsatisfactory evaluations. As a result, under the statute, they were placed in group two for purposes of honorable dismissals. And they were subsequently dismissed 45 days before the end of the school year. They were dismissed. They weren't just given notices. They were dismissed as required by the statute. The plaintiffs do not contend that they were put in an improper group. They do not contend that the dismissal was improper and didn't follow the procedures. And the fact recognizes this was a legitimate decision by the board, that there was no fraud involved, no attempt to get around the statute, that this was a legitimate need of that district to make the cuts it needed to make. Therefore, the question before this court is whether tenured teachers in group two have a right to be recalled after they've been honorably dismissed due to a reduction in force. And the answer is no. The statute, section 2412 of the school code, clearly and unequivocally does not grant recall rights to group two teachers, whether they're tenured or non-tenured. It does grant recall rights to tenured teachers and non-tenured teachers in groups three or four, those who receive proficient evaluations or excellent evaluations. The statute reads, if the board of joint agreement has vacancies for the following school term or within one year from the beginning of the following school term, the positions thereby coming available must be tendered to teachers so removed or dismissed who are in groups three or four of the sequence of dismissal and qualify to hold those positions. It does not give those rights to teachers in group two. Nevertheless, the plaintiffs are arguing that denying recall rights to tenured teachers is somehow inconsistent with the concept of tenure. Therefore, this court should grant recall rights even though the statute does not grant recall rights to these teachers. These same arguments were made to the Illinois Supreme Court in a Chicago case under the Chicago statute. That was the 2012 Chicago Teachers Union case. In that, under the Chicago statute, tenured teachers were not given any recall rights unless the Chicago board adopted procedures for recall, which they did not do. There, the plaintiffs in that case argued that, again, it's inconsistent with the concept of tenure to not give recall rights to tenured teachers because of a variety of different reasons. The Supreme Court emphatically rejected that argument, that tenure is a creature of the statute, or tenure is a creature of the legislature, and it's their right to define tenure the way they want, and if they don't want to give recall rights to teachers, that's within their right. In fact, the statute in Chicago is even, or let me put it this way, Section 24 is even more strong than the Chicago statute with respect to this. In Chicago, as I said before, the board had the power to grant recall rights to tenured teachers. Here, Section 24.12 prohibits the granting of any kind of recall rights to teachers who receive unsatisfactory evaluations. There is a procedure in the statute to allow teachers who receive needs improvement, which also would put them in Group 2. Pardon? For remedial reaction. Yeah, well, there's a, every year in December, there's a joint committee who can redefine the categories in a limited sense. One of their powers is, if they agree, is that teachers who receive a needs improvement, not an unsatisfactory, a needs improvement, can be placed, if the parties agree, in Group 3, thereby granting recall rights. However, that same privilege, so to speak, is not granted to teachers who receive unsatisfactory evaluations, which are the two plaintiffs in this case. So the statute is even stronger than the Chicago statute is denying rights to right to recall. And moreover, denying recall rights to teachers who are unsatisfactory is entirely consistent with the concept of tenure. One of the first cases dealing with tenure is the Donahue case that we cited back in 1952. And Donahue said, the Supreme Court said, the original purpose of tenure is to improve the Illinois school system by assuring teachers of experience and ability in continuous service and rehiring based on merit. This procedure guarantees a better way of rehiring teachers on merit. And I think, in our briefs, we discussed tenure through the years, that it wasn't always by seniority, it wasn't always non-tenure before tenure. The legislature had a right to define how they were going to do a reduction in force the way they thought was best, to balance sort of the rights of the teacher and the rights of the board. And I think here, you can quibble about whether the statute went too far or not far enough. I think if you put Mr. Feldman and I in a room, we could argue forever about what is the best balance for tenure. Let me ask you a question, because at the outset you said you agreed on certain things, and maybe I'm misunderstanding Mr. Feldman's argument, but I don't think he agrees at all. I think he is of the position that there really was no reduction in force because nobody ever really got canned, because they don't know how much the temporary budget or whatever is, so we've got to let these people go. But none of these teachers, they didn't say, get out of the school, you're fired. They set up a notice, and then next fall. I think that's his position. And so that there really was no reduction in force, ergo these procedures. He and I agreed that in the spring, in accordance with the statute, the board properly dismissed these teachers. And it wasn't fraud. It wasn't Peters. It was a legitimate need to follow the statute to reduce. Mr. Feldman is coming up with a construct, which is RIF, which is not mentioned in the statute as to what a RIF is. The board, 45 days, needs to do a sequence of dismissal if they're reducing the total number of teachers in the district or because they're eliminating some type of program. His argument is, well, that's not really until we know, so they RIF, let's say in this case they RIFed, I think, 57 teachers. His argument is, well, it's not really a RIF until we know that they are not going to hire back all of those teachers. And if they do hire back all those teachers, it's now no longer a RIF. But when does that occur? There's nothing in the statute about this. Do we have to wait? When is that? Do we wait until the end of the summer to find out? When is there a RIF of 57 positions? On 45 days prior to the end of the school year. They receive notices. The notices say you are dismissed at the end of the school year, period. If you're in Group 2, there's nothing in there about recall rights. If you're in Group 3 or 4, there is provision saying you will be recalled. To follow up Justice Smith's comments earlier, the counterargument is they don't know exactly the number until the next school year and they find out how many people are going to be employed, right? Right. And it's for every district to a certain extent or whatever. Some districts don't need to RIF or reduce the teachers, some more than others. But that is the statute. It's not written, well, we'll look to the end of the school year before we decide that was a real RIF or not. In a sense, what he's arguing in a different way is I want recall rights for these people. And as I said before, if we go by his theory and our brief, we're going to have results that are going to cause havoc in the school district. Because I could be RIFing, I could be dismissing a teacher because they don't need those services. Whatever program, music, art, let's say, which is always under attack, we're going to have to save money, we're going to have to reduce those teachers. But because of kindergarten kids coming into the system, we may need to hire more teachers. And we'll wind up with more teachers than the ones we dismissed. Under his theory, because we've gone over the number, there's no longer a RIF, I have to keep those teachers. And there's nothing in the statute that says I somehow can get rid of them because under his theory, it was not a reduction in force. So we have to... I mean, there's balancing of interests. The reason I think for this, what boards need to RIF 45 days before the end of the school year is a protection for the teachers to allow them notice that they're going and they can look for another job. So it's a balancing of interests. I think if it was up to the boards, they would prefer not having to make that decision until the summer. This is a construct usually of the teachers. We've gone from, it used to be 60 days, now down to 45 days. And this is just the balance. We would prefer, I think, something else because in my years of service, there's plenty of times where boards have missed the... hopefully not my clients, but other school districts have missed the 45-day notice or 60-day notice and as a result have to keep that teacher. So I think if I were arguing here to change the statute, if you were the legislature, I would argue give us a longer time. But that's not what the legislature did. We're stuck with what, for good or bad, we are stuck with the statute we are. Again, he can argue this, it seems really harsh. The whole point of these reforms was to allow school districts to keep their best teachers. We can argue that it could be tinkered with, but that's not for this court. This is not this court's job, if I can tell you what your job is. It's really the legislature's. Go ahead. It's the legislature's job. I understand his argument. Yes, it means that some tenured teacher who might have been unsatisfactory who was supposed to have a hearing won't have that hearing because they're riffed. Well, we can change the statute, but that's also true under the old statute. If I had dismissed a tenured teacher who had an unsatisfactory and I didn't need to recall anybody, that teacher is out regardless of the fact that they're entitled to a hearing. So the possibilities that could happen, the horrors that can happen, have always been there. And, again, I think the argument is that if there's 100 teachers on the last day of school in the fall, in the spring, and there's 100 or 101 teachers on the first day of school in the fall, where's the riff? But it's not in the statute. It's not the way the statute works. And it could end in a bad result for the school district, meaning that we wind up with different types of teachers, the wrong teachers in the wrong positions. He is trying to argue recall rights in a different way. Because in a normal situation, these people don't have the right, but the others, there were group 3s, he failed to mention, there were group 3 teachers dismissed. They were recalled. Not all the group 1 teachers. Group 1 teachers are first-year teachers who may not have had a chance to have an evaluation. So they may or may not have been given a fair chance. So they were called back, and new teachers were recalled. Here, the only people who weren't recalled were unsatisfactory teachers. And if you look at the statute on hiring, there's a new provision in hiring that states that since they don't have any rights to come back, we have to hire the best qualified, we're mandated to hire the best qualified teachers for vacancies. So they're put in that app pool, and unsatisfactory teachers are not the best teachers, even compared to new teachers. So it's a construct of what the legislature... What we did is exactly what the legislature said we were supposed to do. Did you fill those 50... I think it was 54, not 57. All 54 positions were staff. I think we went over the number, but I'm not sure if they were the exact same positions. In other words, those many teachers were hired, but they may not have been in the... We may not have had the same positions. So the total number was hired back, but it may not have been in the exact positions. There were fewer music teachers and more physics teachers. Right, right. I just want to, in the minute I have left, I just want to emphasize there's no question the board properly placed these teachers in Group 2 based on their unsatisfactory evaluation, and then dismissed them due to a legitimate need to reduce staff. Thus, under the statute, they have no recall rights, and therefore the decision of the circuit court should be affirmed. Thank you. Okay, thank you. Mr. Feld. Briefly. Counsel does not disagree with my initial statement of the case. His position is that the RIF is irrelevant, even though the statute was written to deal with the RIF, that essentially his interpretation is there is no more tenure for tenured teachers, because the way they can manipulate this, they just get rid of them at their discretion. He did not dispute that. Briefly, you correctly state my argument, and that is we're not talking about recall rights. We're talking about what is required in the initial dismissal, not the recall rights. The Chicago case, which he cites, if you read that case, you will see that what the court held, the Supreme Court, was that there were no rules or statutes governing the situation, and that the request of the plaintiffs to create due process rules out of nothing was not required under the law. We have a statute to be interpreted. There was no statute or rule to be interpreted in that case, and that was the basis of the judgment of the Illinois Supreme Court. Council mentioned the joint committee, and the problem with the joint committee is that it doesn't impact on the discretion of the board, because the board has 50% of the votes. So in order to change anything through the joint committee, you've got to get votes from the board,  it can't be done by the individuals or by the union. Council concedes every year, the practice which was done here, and that is to load up the notices to employees in spring, because you've got to do that to protect yourself in the fall if it turns out you don't have enough money to retain them. That's done every year, and what they do at the end is to recall the probationaries they want to recall, and in this case what they did is by manipulating the situation, they recalled the probationaries, but upheld the dismissal of the tenured teachers who are in group two. That's directly in conflict with the statute. The very purpose of the statute was to set up this priority in four groups, and that you can't keep the probationaries in group one and dismiss the tenured teachers who are in group two. They're in group two because, as I indicated before, the board had the absolute discretionary right to put them there. It doesn't make any difference if the teacher is there for 20 years and every year got an excellent or satisfactory evaluation. This one time they say you need improvement, and it can be for any reason. It can be because if you're there 20 years, you are earning twice as much money as a new employee, and they want to deal with their budget this way. They're perfectly entitled under the board's interpretation of this statute to do that, as I have indicated. And as I indicated before, they did not dismiss people because of having anything to do with the RIFs. What they did was to create a group eligible for dismissal if they didn't have the money and had to reduce staff. And that decision as to who and when to dismiss was made after they found out what funding they were going to get and how much money they had and what they had to do. And in this situation, what they did, they had all of these notices went out and they retained virtually everybody except the two tenured teachers who were in group two who they had targeted for dismissal. And respectfully, that was not the contemplation of the legislature in adopting this statute. There's nothing in this statute that suggests that all of the tenure-related provisions in this section of the code somehow have been dismissed, repealed, and no longer are an impact. And yet what the board is suggesting is that none of them mean anything because the board can dismiss tenured teachers at its unfettered discretion. Any questions? No, sir. Thank you, Mr. Felber. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement. Written disposition will be issued. And right now, we will be in a brief recess for a panel change for the next case.